# SIXTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 6D2023-2208
Lower Tribunal No. 22-392CFA

_____

STATE OF FLORIDA,

Appellant,

v.

GABRIEL TREVINO,

Appellee.

_____

Appeal from the Circuit Court for Hendry County.
James D. Sloan, Judge.

May 9, 2025

STARGEL, J.

The State of Florida appeals the trial court's sua sponte order dismissing four charges against Appellee, Gabriel Trevino. We have jurisdiction. *See* Fla. R. App. P. 9.140(c)(1)(A); § 924.07(1)(a), Fla. Stat. (2022). Trevino did not file an answer brief or otherwise participate in this appeal. We reverse and remand for further proceedings because the sua sponte dismissal of charges constituted an improper infringement upon the State's discretion to prosecute.

## Background

According to the arrest affidavit, Trevino's girlfriend ("the victim") gave a recorded statement to law enforcement wherein she detailed that on August 6, 2022, she and Trevino drove to a gas station where he grabbed her by her hair when she attempted to leave the vehicle. A bystander observed these events and asked the victim if she was okay but she was too scared to say anything. Trevino then drove to an isolated area, yelled at the victim and shot twice at the passenger side window of her car, breaking the glass. Both Trevino and the victim exited the vehicle, he threw her to the ground, threatened to shoot her, and began beating her with his fists. She told him she loved him and would do what he asked to get him to stop beating her, and he did. Once Trevino dropped the victim off at her house, she called law enforcement and was ultimately transported by ambulance to the hospital.

According to the arrest affidavit, medical personnel at the hospital determined that the victim sustained a fracture of her left nasal bone, multiple bruises and hematomas on her head, neck, and torso, and she received five sutures to her ear lobe. After Trevino's arrest, law enforcement found two shell casings inside the vehicle—one in the driver's seat and one in the passenger's seat. It was also later determined that Trevino was a convicted felon, and the victim had a no-contact order against him at the time of these events.

A Third Amended Information charged Trevino with twenty-nine crimes as follows: Count I—Domestic Violence Battery; Count II—Aggravated Assault with

a Deadly Weapon; Count III—Shooting within an Occupied Conveyance; Count IV—Kidnapping; Count V—Possession of a Firearm by a Convicted Felon; Count VI—Fleeing to Elude Law Enforcement; and Counts VII–XXIX—Violation of Pretrial Release. Counts V and VI were severed prior to trial at Trevino's request.

On the day of trial, counsel for Trevino asked to address "preliminary matters" and essentially moved in limine to prohibit the State from calling the victim as a witness because, based on counsel's conversation with the victim, she presumed that the victim would testify she didn't remember what happened and nothing could refresh her recollection. Trevino's counsel requested that the State proffer the victim's testimony to determine whether its sole purpose in calling the victim would be to impeach her with her prior recorded statement, which the defense argued was impermissible.[1] The State conceded that it suspected the victim would testify that she did not remember what happened but argued that her testimony was still admissible. The trial court allowed the State to present proffered testimony and advised that if the victim was going to testify that she did not remember what happened on the night of the event, the State was "wasting valuable court resources."

### The Proffered Testimony

Prior to trial, the State presented the proffered testimony of the victim and Detective Andrew Nelson from the Hendry County Sheriff's Office. During the

---

[1] *See Morton v. State*, 689 So. 2d 259, 264 (Fla. 1997), *receded from in part on other grounds in Rodriguez v. State*, 753 So. 2d 29 (Fla. 2000).

proffer, the State introduced pictures of the victim and her car which were taken around the time of the events. The photographs of the victim showed injuries to her face and body while the photographs of the vehicle showed a broken window with pieces of glass on the passenger's seat. The State asked the victim if those pictures were taken on the night the alleged offenses occurred and the victim stated that she did not remember. She further testified that prior to the incident, she had fallen into a "really bad depression," turning to drugs and alcohol, and that there was a period of time where she didn't recall what had occurred. Essentially, the victim testified that she didn't remember anything about the incident, including her prior recorded statement to law enforcement, explaining, "I was high. I was without sleep for days. I was drunk. Ain't no telling what I said. I could have said the sky was purple and there were two midgets growin' at the end of a rainbow. I don't know what I said."

The State presented video surveillance that showed a man walking toward the victim's car on the night of the alleged incidents. The victim identified the man as Trevino and stated that he was her boyfriend of three years. On cross, she testified she couldn't say whether Trevino committed a battery on her, whether he threatened her with a gun, whether he shot out the window of her car that day, or whether he kidnapped her.

During redirect, the State played a tape recording of a jail phone conversation between Trevino and the victim. During the call, Trevino told the victim that if the

4

State decides to go forward with the trial, he has a "secret weapon." He explained as follows:

> [Trevino]: You know what I'm sayin'? I call it my secret weapon –
> [The victim]: Uh-huh.
> [Trevino]: -- and (unintelligible) forgot a lot of things, you know what I mean.
> [The victim]: Yeah.
> [Trevino]: Yeah. If it come down to it, then she goes to court and she tells 'em what she remembers. You feel me?
> [The victim]: Uh-huh.
> [Trevino]: If she remembers anything.
> [The victim]: Yeah.
> [Trevino]: So so what you gone do that like that? Know what I mean?
> [The victim]: Yep, I do.

The State then proffered the testimony of Detective Nelson who stated, in relevant part, that he interviewed the victim while she was at the hospital and she appeared scared and had a difficult time opening her eyes from being beaten. Based on his interview with the victim, he investigated further and located witnesses and evidence to corroborate the victim's story.

At this point, the State sought to introduce the taped statements offered by the victim to Detective Nelson on the night of the events, arguing that because the victim said she does not remember what happened, her taped statement should be admitted under the past recollection recorded exception to hearsay under section 90.803(5), Florida Statutes. The defense objected, arguing that pursuant to *Hernandez v. State*, 31 So. 3d 873 (Fla. 4th DCA 2010), and section 90.803(5), Florida Statutes, to have a recorded recollection admitted, the victim must acknowledge that the recorded

5

statement was correct; but this victim did not remember giving the statement. The State argued that the statement could also be admitted to demonstrate that the victim was feigning a lack of memory of the events after Trevino pressured her, arguing that the recorded jail phone call from Trevino to the victim was evidence of him coercing her to say she did not remember the events.

### The Trial Court's Sua Sponte Dismissal of Counts I Through IV

The trial court found that the State was not permitted to call the victim because the State's sole purpose in doing so would be to impeach the victim with her prior testimony and the victim's prior recorded statements could not be admitted as a past recollection recorded.[2] Further, the trial court found that there were certain elements of the crimes charged in Counts I through IV that the State could not establish without the victim's testimony. Ultimately, without a motion to dismiss from the defense, the trial court dismissed Counts I through IV of the Third Amended Information finding that, based on the victim's proffer, the State was not going to be able to prove the elements of the offenses of kidnapping, aggravated assault with a firearm, or domestic violence battery.

The State objected to the dismissal of the charges, noting that it was entitled to put on its case, and if it failed to present prima facie evidence of each element of the charges, the appropriate remedy would be a judgment of acquittal at the close of

---

[2] We express no opinion as to the propriety of the trial court's decision to preclude the State from calling the victim to testify.

6

the State's case-in-chief. The trial court responded, "Sir, you have presented the evidence to the Court as to what you have," but the State argued it had twelve witnesses ready to testify at trial and had only presented a small portion of its evidence. Over the State's objection, the trial court dismissed Counts I through IV of the Third Amended Information. This was error.

Analysis

A trial court's order of dismissal is reviewed de novo. *State v. Den Besten*, 374 So. 3d 874, 876 (Fla. 6th DCA 2023). "[I]n the absence of statute or motion to dismiss, the decision whether to prosecute or to dismiss charges is a determination to be made by solely the State." *State v. Brosky*, 79 So. 3d 134, 135 (Fla. 3d DCA 2012) (citing *State v. Bonnett*, 985 So. 2d 1194 (Fla. 3d DCA 2008)); *State v. Lamb*, 638 So. 2d 1060, 1061 (Fla. 1st DCA 1994) (holding that sua sponte dismissal of a case and refusal to permit the State to call witnesses based on the trial court's view that the prosecution's case was weak constituted reversible error); *see also State v. Leon*, 967 So. 2d 437, 437 (Fla. 4th DCA 2007) ("[W]e agree that reversal is required because the trial court's action in dismissing the case was an abuse of discretion and constituted an improper infringement upon the State's discretion to prosecute."); *State v. Franklin*, 901 So. 2d 394, 395 (Fla. 5th DCA 2005) (holding that trial court abused its discretion when it sua sponte dismissed charges over State's objection based on defendant's efforts to obtain a license, the cost to taxpayers to prosecute, and "the best interest of judicial economy"). The remedy for the improper dismissal

7

of charges is to reverse and remand for further proceedings. *See State v. Reedy*, 862 So. 2d 941, 942 (Fla. 2d DCA 2004).

<u>Conclusion</u>

It was an abuse of discretion for the trial court to sua sponte dismiss charges over the State's objection. Accordingly, we reverse the trial court's order dismissing Counts I through IV of the Third Amended Information and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

WOZNIAK and BROWNLEE, JJ., concur.


James William Uthmeier, Attorney General, Tallahassee, and Natalia Reyna-Pimiento, Assistant Attorney General, Tampa, for Appellant.

No Appearance for Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF FILED